## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE    )
         )
         )
         )
    v.      )
         )  **ID No. 0810013184**
         )
**JERMAINE CARTER**    )
         )
    **Defendant.**   )
         )
         )
         )

## <u>OPINION</u>

**Submitted:** January 16, 2017
**Decided:** February 3, 2017

*Upon Defendant's Motion for Postconviction Relief,* **SUMMARILY DISMISSED.**
*Upon Counsel's Motion to Withdraw as Counsel,* **GRANTED.**

Christopher S. Koyste, Esquire, 709 Brandywine Boulevard, Wilmington, Delaware 19809, *Attorney for the Defendant*

Gregory E. Smith, Deputy Attorney General, Department of Justice, Carvel State Office Building, 820 North French Street, 7th Floor, Wilmington, Delaware 19801, *Attorney for the State*

**BRADY, J.**

## I. INTRODUCTION & PROCEDURAL BACKGROUND

Before the Court is a Motion for Postconviction Relief, filed pursuant to Superior Court Criminal Rule 61 ("Rule 61"), by Jermaine Carter ("Defendant") on October 18, 2013.[1] Despite any conceivable procedural defects, the Court shall address each claim raised by the Defendant in his numerous filings, from his original Motion for Postconviction Relief to his final submission on January 23, 2017. In sum, Defendant raises eight claims for the Court's review, which he alleges entitle him to withdraw his plea of guilty but mentally ill, and proceed to trial.

On December 8, 2008, the New Castle County Grand Jury indicted Defendant on counts of Rape in the First Degree, Kidnapping in the Second Degree, Possession of a Firearm During the Commission of a Felony ("PFDCF"), Possession of a Firearm by a Person Prohibited ("PFPP"), and Robbery in the First Degree.[2] On December 18, 2009 Defendant pled guilty to Rape in the First Degree, Rape in the Second Degree, Robbery in the First Degree, PFDCF, and two counts of Kidnapping in the Second Degree during a full colloquy with the Court.[3] On June 4, 2010 when Defendant was scheduled to be sentenced, defense counsel and the State presented Defendant's mental health evaluations to the Court. The Court found a factual basis to change the plea to guilty but mentally ill, and conducted a brief colloquy with Defendant.[4] Because Defendant was pleading to the same charges, once the Court found that Defendant qualified for the guilty but mentally ill plea, and that he voluntarily wished to change to such, the Court noted that it was satisfied with Defendant's answers at the December 9, 2009 Plea Hearing.[5]

---

[1] Def.'s Mot. for Postconviction Relief, *State v. Carter*, Id. No. 0810013184, Docket No. 45 (Oct. 18, 2013).
[2] Indictment, *State v. Carter*, Id. No. 0810013184, Docket No. 4 (Dec. 8, 2008).
[3] Trial Calendar/Plea Hearing, *State v. Carter*, Id. No. 0810013184, Docket No. 27 (Dec. 18, 2009).
[4] Transcript of Sentencing, *State v. Carter*, Id. No. 0810013184, at *15 (June 4, 2010).
[5] Transcript of Sentencing, *State v. Carter*, Id. No. 0810013184, at *15 (June 4, 2010).

Defendant was then sentenced to life imprisonment, plus 45 years.[6] Defendant did not file a direct appeal to the Delaware Supreme Court.

On October 18, 2013 Defendant filed a *pro se* Motion for Postconviction Relief and Memorandum of Law in support. Defendant claimed counsel was ineffective for failing to provide Defendant with his Rule 16 discovery materials, not suppressing favorable evidence to the State, and not filing an appeal. Defendant also alleged that there was insufficient DNA evidence from the victims, his plea was involuntary because of his "mentally ill bipolar syndrome," and police reports and victim statements were inconsistent with the physical evidence. On October 29, 2013 the Court ordered the Office of Conflict to appoint counsel to represent Defendant in his postconviction proceedings. On January 6, 2014 Christopher Tease, Esquire was appointed as counsel for Defendant. On May 8, 2014 trial counsel filed his Rule 61 (g)(2) affidavit addressing the claims raised in Defendant's Motion. On October 30, 2014 Donald Roberts, Esquire was substituted as postconviction counsel. On November 10, 2014 the Court allowed Mr. Roberts to review and supplement Defendant's *pro se* Motion, if necessary. On December 18, 2014 Mr. Roberts filed a Motion to Withdraw as counsel. On February 3, 2015 the State filed a response to the Defendant's Motion for Postconviction Relief. On July 23, 2015 a teleconference was held, during which the Court informed the parties that it believed briefing was complete, that it was not necessary to hold an evidentiary hearing, and that the Court was ready to render a decision on Defendant's Motion.

On September 21, 2015, before his first Motion was decided, Defendant filed a second *pro se* Motion for Postconviction Relief. In that Motion, Defendant claims counsel was ineffective for failing to file an appeal, for failing to provide Defendant with copies of his Rule

---

[6] Order, *State v. Carter*, Id. No. 0810013184, Docket No. 41 (June 4, 2010).

16 discovery, and for failing "to investigate and develop insufficient evidence."[7] On September 24, 2015 an office conference was held, during which the Court informed the parties that it would provide Defendant until November 6, 2015 to provide any additional comment he wished the Court to consider. On October 13, 2015 Defendant filed another *pro se* Motion for Postconviction Relief titled "Amending as a matter of course." In that Motion, Defendant claimed trial counsel was ineffective for failing to file an appeal, failing to give Defendant copies of his Rule 16 discovery materials, and failed "to investigate to develop that the evidence was weak."[8] Defendant also claimed that his plea of guilty but mentally ill was not knowingly accepted.[9] On October 16, 2015 Defendant filed a Memorandum of Law in support of his Motion.[10] On November 4, 2015 Defendant filed another *pro se* Motion for Postconviction Relief, titled "Leave to Amend."[11] In that Motion, Defendant claimed that trial counsel was ineffective for failing to file an appeal, failing to discuss prejudicial joinder with Defendant, failing to provide Defendant with copies of his Rule 16 discovery materials.[12] Defendant also claimed that his plea of guilty but mentally ill was not knowingly accepted, and that his sentence was illegal because the "investigative services office failed to obtain victim impact statement."[13] On November 9, 2015 Defendant filed another *pro se* Motion for Postconviction Relief, titled "Leave to Amend as Justice so Requires,"[14] raising similar issues, and also claiming that his

---

[7] *See* Def.'s Mo. for Postconviction Relief, *State v. Carter*, Id. No. 0810013184, Docket No. 85 (Sep. 21, 2015).

[8] *See* Def.'s Mo. for Postconviction Relief, *State v. Carter*, Id. No. 0810013184, Docket No. 69 (Oct. 13, 2015).

[9] *Id.*

[10] This Memorandum of Law was identical to the Memorandum Defendant filed with his initial October 18, 2013 *pro se* Motion for Postconviction Relief. This same Memorandum of Law accompanies numerous other subsequent filings by Defendant in this case, without change.

[11] *See* Def.'s Mo. for Postconviction Relief, *State v. Carter*, Id. No. 0810013184, Docket No. 71 (Nov. 4, 2015).

[12] *Id.*

[13] *Id.*

[14] *See* Def.'s Mo. for Postconviction Relief, *State v. Carter*, Id. No. 0810013184, Docket No. 72 (Nov. 9, 2015).

sentence was illegal because the "investigative services office failed to obtain victim impact statement."[15]

On January 6, 2016 the Court entered a Scheduling Order to afford the parties the opportunity to address claims raised in Defendant's Amended Motion that were not addressed by previous submissions. Trial counsel was given until February 2, 2016 to address the new claims raised, the State was given until March 1, 2016 to file any argument in response, and Defendant was to file any reply by April 5, 2016.

On February 1, 2016 Defendant filed another *pro se* Motion for Postconviction Relief titled "Leave to Amend as Justice so Requires."[16] On February 2, 2016 trial counsel filed his affidavit addressing Defendant's new claims. On March 7, 2016 Defendant filed another *pro se* Motion for Postconviction Relief titled "Leave to Amend as Justice so Requires."[17] On March 18, 2016 the Court granted the State an extension until May 5, 2016 to file its response to Defendant's new claims. On April 4, 2016 Defendant filed *pro se* for Leave to Amend his Motion for Postconviction Relief.[18] On April 28, 2016 the State informed the Court that the Deputy Attorney General assigned to the case had inadvertently been removed as the State's attorney on the Docket, and the State had not received any submissions in the case after the September 24, 2015 office conference. On April 28, 2016 the Office of Conflict Counsel

---

[15] *Id.*

[16] *See* Def.'s Mo. for Postconviction Relief, *State v. Carter*, Id. No. 0810013184, Docket No. 75 (Feb. 1, 2016) (Defendant claimed that the police conducted an unreasonable search and seizure, and that the State committed malicious prosecution due to a wrongful indictment. Defendant also claimed that trial counsel was ineffective for failing to "investigate thoroughly." Defendant also claimed his plea of guilty but mentally ill was not knowingly accepted)).

[17] *See* Def.'s Mo. for Postconviction Relief, *State v. Carter*, Id. No. 0810013184, Docket No. 77 (Mar. 7, 2016) (Defendant claimed generally that there was unreasonable search and seizure, that the State committed malicious prosecution, and that trial counsel was ineffective)).

[18] *See* Def.'s Mo. for Leave to Amend, *State v. Carter*, Id. No. 0810013184, Docket No. 81 (Apr. 4, 2016) (Defendant claimed generally that there was unreasonable search and seizure, malicious prosecution, and ineffective assistance of counsel)).

informed the Court that Mr. Roberts was closing his law practice, and that new counsel would be appointed to represent Defendant.

On May 3, 2016 the Court granted the State's request for an extension, and on June 27, 2016 the State filed its response to Defendant's new claims. On July 28, 2016 Christopher Koyste, Esquire was appointed as counsel for Defendant. On August 8, 2016 the Court granted Mr. Koyste's request for a sixty-day abeyance in order to receive the hard-copy of the file, review the submissions of the parties, and submit any additional filing. On August 22, 2016 Defendant filed a *pro se* Motion to Amend his Postconviction Motion.[19] On September 26, 2016 Mr. Kosyte filed a Motion to Withdraw. On January 13, 2017 the Court wrote a letter to Defendant informing him that the Court had not received a final response in his proceeding, and provided the Defendant until February 24, 2017 in order to file a response. On January 23, 2017 Defendant filed a *pro se* Motion for Leave to Amend.[20] In that Motion, Defendant claimed generally that he "[was] suffering from unreasonable search and seizure, malicious prosecution, and ineffective assistance of counsel," all of which he "[was] not supposed to be suffering from."[21] Having before it submissions from all of the parties addressing Defendant's original and amended claims, and having given Defendant the opportunity to file a final response, the Court took the matter under advisement.[22] This is the Court's decision.

## II. FACTS

On October 13, 2008, Defendant approached Cherish Ford ("Ford") on Wilmington Street while she was taking her child out of her car. Defendant displayed a silver colored

---

[19] *See* Def.'s Mo. for Leave to Amend Rule 61, *State v. Carter*, Id. No. 0810013184, Docket No. 97 (Aug. 22, 2016) (Defendant claimed generally that he "[was] suffering from unreasonable search and seizure, malicious prosecution, and ineffective assistance of counsel," all of which he "[was] not supposed to be suffering from")).

[20] *See* Def.'s Mo. for Leave to Amend, *State v. Carter*, Id. No. 0810013184 (Jan. 23, 2017).

[21] *Id.*

[22] The Court recognizes there were multiple filings by the Defendant, some while he was represented by counsel. The Court has given consideration to all the issues raised by the Defendant, judging them to be in response to the Motions to Withdraw.

6

handgun and stated "give me your money." Ford turned over $4, several credit cards and her purse, after which Carter fled.

On October 14, 2008, in the 800 block of North Madison Street in Wilmington, Defendant pulled Deja Hardin ("Hardin") into an alley, told her, "don't move or I'll kill you," and robbed her of an MP-3 player and her purse.

On October 15, 2008, T.T.[23] was walking in the 1400 block of Northeast Boulevard in Wilmington, Delaware. Defendant approached T.T., displayed a silver handgun, and forced her into an alley near the 1100 block of 14th Street. Defendant ordered T.T. to remove her pants and underwear and told her to get on her knees. Defendant then raped her anally and vaginally, took three silver-colored rings from her, and fled on foot. T.T. immediately reported the crimes, underwent a sexual assault examination at a hospital at which evidence was collected, and identified Defendant as her assailant from a photographic lineup.

On October 16, 2008, Defendant encountered R.T. walking in the 3100 block of North Jefferson Street. Defendant produced a silver and black handgun, placed the gun at the back of R.T.'s head, grabbed R.T. by the arm, and forced her into the rear yard of a house in the vicinity, where Defendant engaged in nonconsensual sexual intercourse with R.T. Defendant then emptied the contents of R.T.'s book bag, took a cell phone, and fled on foot. R.T. then spotted two teenagers who were on their way to school, one of which contacted the police. R.T. underwent a sexual assault examination at a hospital at which evidence was collected.

Police arrested Defendant on October 17, 2008. At the time of the arrest, Defendant was in possession of a silver and black handgun. Defendant was taken into custody and admitted to going into an alley with T.T., but asserted that they had done so for the purpose of having consensual sexual intercourse. Defendant admitted displaying a handgun and taking property

---

[23] Initials are being substituted for the victims' full names in the cases involving rape charges.

7

from T.T. Defendant admitted robbing R.T., but denied raping her. Defendant also confessed to robbing both Ford and Hardin.

### III. CONTENTIONS OF THE PARTIES

### Defendant's Contentions

Taken as a whole, and considering all of Defendant's filings, Defendant alleges that his trial counsel was ineffective because counsel initially communicated the State's plea offer to the Defendant by mailing a letter to Defendant's parent's address, and received acceptance of the plea from Defendant's father instead of from Defendant. Defendant contends that his trial counsel was ineffective because he failed to file an appeal after sentencing. Next, Defendant contends that trial counsel was ineffective for failing to supply Defendant with a copy of his Rule 16 discovery prior to presenting the plea offer to Defendant, and prior to sentencing. Defendant contends that trial counsel was ineffective for failing to investigate the sufficiency of the evidence against Defendant.[24] Defendant contends that his guilty plea was not knowingly and voluntarily entered because the plea colloquy was improper. Defendant claims that he was illegally sentenced because the investigative services office failed to obtain a victim impact statement.[25] Defendant raises a generalized claim that the police conducted an illegal search and seizure. Finally, Defendant contends that the State committed prosecutorial misconduct because of a wrongful indictment.

---

[24] Def.'s Amended Mot. for Postconviction Relief, *State v. Carter*, Id. No. 0810013184, Docket No. 69 (Oct. 16, 2015).
[25] Def.'s Amended Mot. for Postconviction Relief, *State v. Carter*, Id. No. 0810013184, Docket No. 69 (Oct. 16, 2015).

8

## Trial Counsel's Affidavit

Trial counsel contends that as he received discovery from the State, he provided copies of the documents to Defendant.[26] Counsel reviewed Defendant's confession, and determined that there was no basis to file a motion to suppress the statement.[27] Counsel argues that he was not ineffective for failing to file an appeal because Defendant was sentenced within the range of potential penalties for the offenses to which he entered a guilty plea, and Defendant did not instruct counsel to file an appeal on his behalf.[28] Trial counsel contends that he was not ineffective for failing to develop that evidence was insufficient.[29] Counsel argues that Defendant was identified by his victims, DNA evidence tied Defendant to the sex offenses, and Defendant gave a lengthy statement to police which would have been detrimental to Defendant if he had gone to trial.[30]

## State's Response

The State first argues that Defendant's repetitive filings do not comply with the Superior Court Criminal Rules.[31] The State contends that Defendant's claims of unreasonable search and seizure and malicious prosecution are barred by Rule 61(i)(1) and (3), because they are untimely, and the claims were not raised in the proceedings leading to Defendant's conviction.[32] The State also contends that Defendant's claims of ineffective assistance of counsel are conclusory and entirely without merit.[33]

---

[26] May 7, 2014 Aff. of Tr. Counsel, at *236 of Appendix to Mo. to Withdraw as Counsel, *State v. Jermaine Carter*, Id. No. 0810013184 (Sep. 30, 2016).
[27] *Id.*
[28] February 1, 2016 Aff. of Tr. Counsel, at *240 of Appendix to Mo. to Withdraw as Counsel, *State v. Jermaine Carter*, Id. No. 0810013184 (Sep. 30, 2016).
[29] *Id.*
[30] *Id.*
[31] State's Response to Def..'s Amended Mo. for Postconviction Relief, *State v. Jermaine Carter*, Id. No. 0810013184 (June 27, 2016).
[32] *Id.*
[33] *Id.*

## Mr. Kosyte's Motion to Withdraw[34]

Counsel contends that after a thorough review of Defendant's case, he could find no claims of arguable merit, and moved to withdraw.[35] Counsel contends that all of Defendant's claims are barred by Rule 61(i)(1) and (3) because his Motion was filed more than one year after imposition of sentence, and none of the claims were raised at the trial or appeal stage.[36] Counsel contends that there is no evidence that trial counsel failed to investigate the record, and there was overwhelming evidence against Defendant.[37] Counsel contends that trial counsel provided Defendant with discovery as he received it.[38] Also, counsel contends that trial counsel was not ineffective for failing to file an appeal, because, as trial counsel's affidavit states, Defendant never asked trial counsel to do so.[39] Counsel contends that both of Defendant's plea colloquies do not reflect that he was unable to answer or had any difficulty answer the Superior Court's questions.[40] Counsel contends Defendant was fully apprised of the offenses to which he was pleading guilty, the rights he was giving up, and the possible sentences he may receive.[41] Counsel contends there was no basis for filing a motion to suppress the handgun which was found on Defendant, because he was arrested and the handgun was seized lawfully.[42] Counsel

---

[34] While Mr. Roberts is no longer representing Defendant, it is of note that his conclusions were similar to Mr. Koyste's. Mr. Roberts asserted that after an exhaustive review of Defendant's case file he could not ethically advocate any claims on behalf of Defendant. Counsel believed Defendant's Motion to be barred as untimely because it wasn't filed within one year of the imposition of his sentence. Further, he noted Defendant did not allege new evidence, or a new rule of constitutional law made retroactive which applies to this case to overcome the procedural bars. Mr. Roberts concluded that Defendant's claims did not articulate any concrete allegations of ineffective assistance, and that Defendant's statements at the plea colloquy rebut the fact that Defendant would have gone to trial. Finally, Mr. Roberts reported that when he explained to Defendant the consequences of withdrawing his guilty plea and going to trial, Defendant indicated that all he really wanted was a lesser sentence.

[35] Mo. to Withdraw, *State v. Jermaine Carter*, Id. No. 0810013184, Docket No. 99 (Sep. 26, 2016).

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] *Id.*

[40] *Id.*

[41] *Id.*

[42] *Id.*

10

contends that the record contains no evidence of a wrongful indictment against Defendant.[43] Counsel contends the victim impact statement was submitted to the Court before Defendant was sentenced, and the Court was able to consider the statement in its decision.[44]

## IV. PROCEDURAL BARS

Before addressing the merits of Defendant's claims, the Court must apply the procedural bars set forth in Superior Court Criminal Rule 61.[45] That rule provides that a motion is procedurally barred if the motion is untimely, repetitive, a procedural default exists, or the claim has been formerly adjudicated.[46] Rule 61(i)(1) provides, that a motion for postconviction relief is time barred when it is filed more than one year after the conviction has become final or one year after a retroactively applied right has been newly recognized by the United States Supreme Court or by the Delaware Supreme Court.[47] Rule 61(i)(2) provides that a motion is repetitive if the defendant failed to raise a claim during a prior postconviction proceeding unless "consideration of the claim is warranted in the interest of justice."[48] Rule 61(i)(3) bars consideration of any claim "not asserted in the proceedings leading to the conviction" unless the petitioner can show "cause for relief from the procedural default" and "prejudice form violation of the movant's rights."[49] Rule 61(i)(4) provides that any claim that has been adjudicated "in the proceedings leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas corpus proceedings" is barred "unless reconsideration of the claim is warranted in the interest of justice."[50]

---

[43] *Id.*
[44] *Id.*
[45] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).
[46] *See* Super. Ct. Crim. R. 61(i)(1)-(4)(2013).
[47] Super. Ct. Crim. R. 61(i)(1)(2013).
[48] Super. Ct. Crim. R. 61(i)(2)(2013).
[49] Super. Ct. Crim. R. 61(i)(3)(2013).
[50] Super. Ct. Crim. R. 61(i)(4)(2013).

If a procedural bar exists, the Court will not consider the merits of Defendant's postconviction claim unless Defendant can show that the exception found in Rule 61(i)(5) applies.[51] Rule 61(i)(5) provides that claims otherwise procedurally barred can be heard if Defendant makes out a "colorable claim that there was a miscarriage of justice because of a constitutional violation that undermines the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction."[52]

Defendant's Motion for Postconviction Relief is time barred under Rule 61(i)(1). The motion was filed more than three years after Defendant's conviction became final and Defendant has failed to assert a retroactively applicable right that is newly recognized after the judgment of conviction became final.[53]

Defendant has further failed to provide any basis, and the record is devoid of any, that would permit this Court to consider whether any exception to the procedural bars would apply in this case. Therefore, Defendant's Motion for Postconviction Relief is **SUMMARILY DISMISSED**.

Having determined Defendant's Motion for Postconviction Relief is procedurally barred, Mr. Koyste's Motion to Withdraw as Counsel is **GRANTED**.

---

[51] *See* Super. Ct. Crim. R. 61(i)(5)(2013)

[52] *Id.*

[53] Superior Court Criminal Rule 61(m)(1) states "[a] judgment of conviction is final for the purpose of this rule . . . if the defendant does not file a direct appeal, 30 days after the Superior Court imposes sentence." Super. Ct. Crim. R. 61(m)(1)(2013). Defendant was sentenced on June 4, 2010, and did not file a direct appeal to the Delaware Supreme Court. *See* Order, *State v. Carter*, Id. No. 0810013184, Docket No. 41 (June 4, 2010). Defendant's conviction therefore became final thirty days after his sentencing date on June 4, 2010. Defendant did not file this instant Motion for Postconviction Relief until October 18, 2013. *See* Def..'s Mot. for Postconviction Relief, *State v. Carter*, Id. No. 0810013184, Docket No. 45 (Oct. 18, 2013).

## IV. DISCUSSION

Although the Court need not address the merits of Defendant's postconviction claims, because they are procedurally barred, the Court will briefly discuss Defendant's claims that his trial counsel was ineffective.

To prevail on an ineffective assistance of counsel claim, a petitioner must show that counsel's performance was deficient and that the deficiency prejudiced the defendant.[54] For purposes of analysis of ineffective assistance of counsel claims, a plea of guilty but mentally is treated as a plea of guilty.[55] In the context of a guilty plea, "a defendant who pleads guilty upon the advice of counsel 'may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standard set forth in *McCann*.'"[56] As such, "the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'"[57] The prejudice requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."[58] It is not enough for one making a claim of ineffective assistance of counsel to "show that the errors had some conceivable effect on the outcome of the proceeding."[59]

---

[54] *Strickland v. Washington*, 446 U.S. 668, 687 (1984).

[55] *See State v. Durham*, 1992 WL 390610, at *3 (Del. Super. Dec. 21, 1992) (The Court addressed Defendant's claims of ineffective assistance of counsel and whether Defendant knowingly and voluntarily entered into his plea of guilty but mentally ill under the same standard as if he had pled guilty).

[56] *Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985) (quoting *Tollet v. Henderson*, 411 U.S. 258, 267 (1973)).

[57] *Id.* at 56 (quoting *McCann v. Richardson*, 397 U.S. 759, 771 (1973)).

[58] *Hill*, 474 U.S. at 59.

[59] *Strickland*, 446 U.S. at 693.

13

Because Defendant must prove both prongs of *Strickland*, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."[60]

**Trial Counsel Was Not Ineffective in Communicating the Plea Agreement to Defendant**

Defendant asserts that counsel initially communicated the State's plea offer to him by mail, rather than meeting with him in person, mailed that letter to Defendant's parents' address, and received acceptance of the plea from Defendant's father instead of from Defendant himself.[61] Specifically, Defendant argues that the first prong of *Strickland* has been established because trial counsel violated Rule 1.5 of the Rules of Professional Conduct ("Rule 1.5"), which pertains to confidentiality of information, because trial counsel instructed his secretary to accept Defendant's plea agreement.[62] Defendant further asserts that his trial counsel violated Rule 1.5 because his secretary erroneously accepted the decision from Defendant's father, instead of from the Defendant.[63]

Defendant then argues that the second prong of *Strickland* has been established because, but for these events, he would not have pled guilty.[64] For the reasons stated below, the Court finds that Defendant has failed to establish prejudice under the second prong of *Strickland* and therefore the Court need not address whether trial counsel's performance was deficient.[65]

Both Defendant and trial counsel's statements at the initial plea hearing contradict Defendant's claims. Trial counsel stated at the December 18, 2009 plea hearing that "Mr.

---

[60] *Id.* at 697.
[61] Memorandum of Law in Support of Rule 61 Mot. for Postconviction Relief, *State v. Carter*, Id. No. 0810013184, Docket No. 70, at *3 (Oct. 16, 2015).
[62] *Id.*
[63] *Id.*
[64] *Id.*
[65] *Strickland*, 446 U.S. at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the grounds of lack of sufficient prejudice, . . . that course should be followed.").

Motoyoshi and I have met with [Defendant] on several occasions, and particularly today, to go over the terms of the plea agreement, discuss the various trial rights that he gives up by entering the plea, discuss the penalties he's exposing himself to by entering into this plea, discuss the process for the Court to prepare a Presentence report and for sentencing at a later date. I think he's entering into this matter knowingly, intelligently, and voluntarily."[66]  Defendant's trial counsel further stated that he had reviewed Defendant's mental health history and the medications he was taking as a pre-trial detainee.[67]  Defendant's trial counsel then advised the Court that Defendant understood that by virtue of the conviction that Defendant would have to register as a Tier three sex offender and that trial counsel had discussed what such a status requires.[68]  The Court inquired of Defendant directly, and Defendant responded directly that he was entering the plea voluntarily.[69]

Based on the record, Defendant's trial counsel's assertions and Defendant's own statements to the Court, it is evident that Defendant's decision to plead guilty was knowingly and intelligently made and voluntarily offered.  Further, Defendant reiterated his intent to enter a plea of guilty six months after the initial entry of the plea at the time he sought to change his plea of guilty to guilty but mentally ill.  It is clear that Defendant had ample opportunity to discuss the plea agreement with his trial counsel after Defendant's father allegedly accepted the plea agreement on Defendant's behalf.

It is evident from Defendant's statements that he entered this plea with an understanding of the nature of the proceeding and the consequences of his decision, he had sufficient time to

---

[66] Transcript of Plea, *State v. Carter*, Id. No. 0810013184, at *7 (Dec. 18, 2009).
[67] *Id.* at *8.
[68] *Id.* at *10.
[69] *See* Transcript of Sentencing, State v. Carter, Id. No. 0810013184, (June 4, 2010).

discuss the matter with his attorney, and that he believed the plea was in his best interests. Defendant has failed to satisfy the prejudice prong of *Strickland* and this claim is without merit.

## Trial Counsel Was Not Ineffective for Failing to File a Notice of Appeal After Sentencing

As noted above, to prevail on an ineffective assistance of counsel claim, a petitioner must show that counsel's performance was deficient and that the deficiency prejudiced the defendant.[70] In order for Defendant show prejudice he must "show that the errors had some conceivable effect on the outcome of the proceeding."[71]

Defendant fails to identify any grounds for an appeal or allege that he would have likely succeeded on an appeal.[72] Defendant's claim is nothing more than a conclusory statement which this Court will not consider.[73]

## Trial Counsel Was Not Ineffective for Failing to Provide Defendant With a Copy of His Rule 16 Discovery

Defendant claims he did not receive the discovery, however Defendant has failed to allege that if he had received the Rule 16 discovery before the plea offer was presented to him, that he would not have plead guilty. In fact, Defendant's previous appointed counsel indicated, in his Motion to Withdraw, that Defendant does not currently want to go to trial but rather wants a lesser sentence.[74] In addition, there is no record to support a conclusion that Defendant did in fact receive all pertinent information before Defendant entered his plea of guilty. Defendant's trial counsel, in his affidavit in response to Defendant's claims of ineffective assistance of counsel, states "as they were received, I provided Mr. Carter copies of the discovery responses

---

[70] *Strickland v. Washington*, 446 U.S. 668, 687 (1984).

[71] *Strickland*, 446 U.S. at 693.

[72] *See* Def.'s Amended Mot. for Postconviction Relief, *State v. Carter*, Id. No. 0810013184, Docket No. 69 (Oct. 16, 2015).

[73] Conclusory allegations are insufficient to establish a claim of ineffective assistance of counsel. *See Younger v. State*, 580 A.2d 552, 555 (Del. 1990).

[74] Mo. to Withdraw, *State v. Carter*, Id. No. 0810013184, Docket No. 60 (Dec. 18, 2014).

16

sent to us by the State."[75]  The Court further asked Defendant at his plea hearing if he had reviewed the substance of the evidence that the State's witnesses would present against him and he answered that he had.[76]

Based on the above, this Court finds that Defendant has failed to establish prejudice as required by the second prong of *Strickland*.

### Trial Counsel Was Not Ineffective for Failing to Investigate the Sufficiency of the Evidence Against Defendant

Based on the record in this case, it appears that trial counsel did investigate the sufficiency of the evidence against Defendant.  At Defendant's plea hearing the Court asked whether "[o]ver the course of the time that your attorneys have represented you, are you satisfied that you've had ample time to meet with them and talk about the evidence against you?"[77]  To which the Defendant responded "Yes, your Honor."[78]  The Court also asked Defendant if he had reviewed the substance of the evidence that the State's witnesses would present against him and he answered that he had.[79]

In addition, Defendant has failed to identify what evidence, if any, trial counsel should have uncovered that would have prevented him from entering a plea of guilty.  In fact, Defendant's previous appointed counsel in his Motion to Withdraw indicates that "defendant is unable to point to any favorable evidence or indicate what type of motion, if any, should have been filed after sentencing."[80]  Defendant has further failed to allege that had his trial counsel investigated further that Defendant would not have entered a plea of guilty.[81]

---

[75] Affidavit, *State v. Carter*, Id. No. 0810013184, Docket No. 53, at *1 (May 8, 2014).

[76] Transcript of Plea, *State v. Carter*, Id. No. 0810013184, at *22 (Dec. 18, 2009).

[77] *Id.* at *21.

[78] *Id.* at *22.

[79] *Id.*

[80] Mo. to Withdraw as Counsel, *State v. Carter*, Id. No. 0810013184, Docket No. 60, at *3 (Dec. 18, 2014).

[81] Furthermore, the evidence against the Defendant was overwhelming.  DNA and the Defendant's own admissions identified him as participating in the crimes.

The Court finds that there is no support for Defendant's contention that trial counsel's performance was deficient. The Court finds that Defendant has failed to establish either the first prong of *Strickland* or prejudice under the second prong of *Strickland* as to this claim.

## The Plea Colloquy Was Proper

Defendant argues that his plea was not knowingly made because the plea colloquy was improper.[82] Defendant however fails to identify any specific error. Superior Court Criminal Rule 11(c) sets out the information a sentencing court must obtain before accepting a plea of guilty. Specifically, the Rule states that the Court must determine if the defendant understands the following: (1) the nature of the charge to which the plea is offered; (2) the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law; (3) the fact that the court is required to consider any applicable sentencing guidelines but may depart from those guidelines under some circumstances; (4) when applicable, that the court may also order the defendant to make restitution to any victim of the offense; (5) that the defendant has the right to plead not guilty or to persist in that plea if it has already been made; (6) that the defendant has the right to be tried by a jury, when applicable, and at trial the right to the assistance of counsel; (7) that the defendant has tot right to confront and cross-examine adverse witnesses; (8) that the defendant has the right against compelled self-incrimination; (9) that if a plea of guilty is accepted by the court there will not be a further trial of any kind, so that by pleading guilty the defendant waives the right to a trial; and (10) that if the court intends to question the defendant under oath, on the record, and in the presence of counsel about the

---

[82] Def.'s Amended Mot. for Postconviction Relief, *State v. Carter*, Id. No. 0810013184, Docket No. 69 (Oct. 16, 2015).

18

offense to which the defendant has pleaded, that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.[83]

The Court asked the Defendant each of the requirements set forth in Superior Court Criminal Rule 11(c) in great detail and received an individual response from the Defendant that he understood each.[84] As a result, the Court finds that the plea colloquy was not improper and that Defendant's plea was knowingly made.

### Victim Impact Statement Was Considered

Defendant argues that he was illegally sentenced because, "the investigative services office failed to obtain [a] victim impact statement."[85] The Court understands this claim to mean that a victim impact statement was considered by the Court prior to sentencing, but was not a part of the pre-sentence investigation.

The record reflects that a thorough presentence investigation report was made and considered by the Court. Contrary to Defendant's claim, the Court confirmed that two victim impact statements were included in the presentence investigation report. In one, T.T. described how her life, "since that horrifying time has been nothing but stress, paranoid, [sic] sleepless nights and not to mention nightmares. I constantly see and the picture in my head of you holding that gun to my head and that clicking sound as you told me to 'keep walking,' 'don't stop' 'shut-up' as I cried, scared for my life praying that you didn't blow my head off."[86] Cherish Ford wrote, "[t]his was the worse [sic] thing that ever happened to me, a man held a gun to myself [sic] and my baby…. Oftentimes I cry when I think about what could of happen [sic] if he had

---

[83] Super. Ct. Crim. R. 11(c).
[84] Transcript of Plea, *State v. Carter*, Id. No. 0810013184, at *11-24 (Dec. 18, 2009).
[85] Def's Amended Mot. for Postconviction Relief, *State v. Carter*, Id. No. 0810013184, Docket No. 71 (Nov. 5, 2015).
[86] Presentence Report, *State v. Carter*, Id. No. 0810013184.

19

shot us."[87] At sentencing, the State indicated that it had a letter from one of the victims which was not in the presentence report.[88] The defense did not object to the letter being admitted, and the Court also considered the letter.

The Court is instructed to consider victim impact statements under circumstances such as those in this case. 11 *Del. C.* § 4331(d), states, in pertinent part, "a victim impact statement shall be presented to the court prior to the sentencing of a convicted person, where such a person has been convicted of … a felony."[89]

Pursuant to Rule 32(a)(1)(C),[90] Ms. Waters, one of the named victims in the indictment, made a statement to the Court at Sentencing.[91] Ms. Waters explained the extent of her emotional distress and the impact that Defendant's actions has had on her life.[92]

Defendant was also able to provide a statement to the Court following the victim's statement and a statement by the State.[93] He expressed remorse and regret for his actions.[94] The Court noted, when sentencing the Defendant, that it considered the impact that Defendant's crimes had on the community and specifically the victims in this case.[95]

If the Defendant's claim is that the Court considered information about which he was not heard, the record does not so reflect, and provides no valid grounds to support Defendant's claim.

---

[87] *Id.*

[88] Transcript of Sentencing, *State v. Carter*, Id. No. 0810013184, at *17 (June 4, 2010).

[89] 11 *Del. C.* §4331(d).

[90] *See* Super. Ct. Crim. R. 32(a)(1)(C) (Before imposing sentence … the victim shall have an opportunity to speak, in accordance with guidelines established by the court)).

[91] Sentencing Transcript, *State v. Carter*, Id. No. 0810013184, Docket No. 43, at *15-17 (August 22, 2013).

[92] *Id.*

[93] *Id.* at *34.

[94] *Id.*

[95] *Id.* at *35 ("And while the Court has empathy for you and considers those factors in this decision, I also need to consider the impact that your conduct had on the community and on these individuals. The three that I've heard from personally, the two by letter and one in person, have been consigned to life sentences. They're not doing well. And they are repeatedly refreshed in their minds with the experiences that you imposed and inflicted upon them").

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion for Postconviction Relief is

**SUMMARILY DISMISSED** and Mr. Kosyte's Motion to Withdraw as Counsel is **GRANTED**.


**IT IS SO ORDERED.**

**M. Jane Brady**
Superior Court Judge